UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

NEIL JOHNSON, HIAWATA BURKS, RONALD
COUNTS, JU[D]E FERNAND, KASEY HARGE,
DEVON PANDY, CARL STEVENS, ROBERT
TAYLOR, KEVIN WASHINGTON, and THE SUNNI
MUSLIM COMMUNITY AT FCI OTISVILLE,

        Plaintiffs,

    -v-                                   No.  07 Civ. 6641 (LTS)(DFE)

WARDEN J. KILLIAN, RABBI LASKIN, and
CASE MANAGER D. WYNKOOP, in their
individual and official capacities,

        Defendants.

--------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

        Pro se Plaintiffs Neil Johnson ("Johnson"), Devon Pandy ("Pandy"), Hiawata Burks

("Burks"), Ronald Counts ("Counts"), Jude Fernand ("Fernand"), Kasey Harge ("Harge"), Carl

Stevens ("Stevens"), Robert Taylor ("Taylor") and Kevin Washington ("Washington"), seeking

monetary and declaratory relief on behalf of themselves and a putative class of Sunni Muslim inmates

at the Federal Correctional Institution at Otisville, New York ("FCI Otisville"), bring this action

pursuant to the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, and the First

Amendment of the United States Constitution, claiming that Defendants Warden J. Killian

("Killian"), Rabbi Laskin ("Laskin"), and Case Manager D. Wynkoop ("Wynkoop") (collectively,

"Defendants"), placed a substantial burden on the practice of their Muslim religion and infringed

upon their free exercise of religion by limiting congregational group prayer within FCI Otisville

(hereinafter "RFRA claims" and "First Amendment prayer policy claims").  Plaintiffs also bring

claims under the First Amendment based on Plaintiff Neil Johnson's ("Johnson") transfer out of FCI

Otisville, allegedly in retaliation for Johnson's attempts to redress his grievances and in an attempt to moot the present lawsuit (hereinafter "First Amendment retaliation claims").  Defendants move, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, for dismissal all of Plaintiffs' claims except for Johnson's First Amendment retaliation claims against Wynkoop.  In their opposition papers, Plaintiffs cross-move for summary judgment, on the basis that the prayer policies allegedly implemented by Defendants at FCI Otisville were not authorized by national Bureau of Prisons ("BOP") policies.

Defendants' motion papers were accompanied by a Statement pursuant to S.D.N.Y. Local Civil Rule 56.1, as well as a Notice to Pro Se Litigant Opposing Motion for Summary Judgment, as required by Local Civil Rule 56.2, and a number of evidentiary submissions. Although Plaintiffs have not submitted the required response to Defendants' Rule 56.1 Statement and Defendants' factual proffers could, for that reason, be taken as admitted under Local Civil Rule 56.1(c), the Court has examined carefully Plaintiffs' memorandum and evidentiary proffers in determining whether there are any genuine issues of material fact.  The Court has also considered carefully all of the parties' submissions.  For the reasons explained below, all of Plaintiffs' claims are dismissed (without prejudice as to certain Plaintiffs' claims), except for Plaintiff Johnson's First Amendment retaliation claim against Defendant Wynkoop; and Plaintiffs' cross-motion is denied.

BACKGROUND

Plaintiffs' allegations, as presented in the Plaintiffs' First Amended Complaint (the "FAC"), are summarized briefly.  Before Defendant Killian became warden of the Federal Correctional Institution in Otisville, New York ("FCI Otisville") in 2007, there was an inconsistently-enforced policy that generally restricted Muslim inmates' ability to perform regular

congregational prayers.  (FAC ¶ 5.)  After Killian's arrival, however, a policy was consistently enforced whereby Muslim prisoners could only perform a congregational prayer one time a day, five days a week, in the chapel.  According to Plaintiffs, however, they are required by their religious beliefs to participate in congregational prayer five times a day.  Plaintiffs additionally allege that they were unable to conduct individual prayers in their own cells in proper adherence to their religious tenets, because of, inter alia, the restrictive size of the cells and the nearby depiction of images.  (Id. ¶¶ 7-12.)  On April 12, 2007, after an attempted group prayer meeting was halted by a corrections officer, Johnson's case manager, Defendant Wynkoop, threatened to write Johnson an incident report if he attempted to participate in group prayer again.  Johnson said that he would file a suit in court, Wynkoop responded, "Why don't you do that" and, on June 6, 2007, Johnson filed the instant suit.  (FAC ¶ 14.)  A few days later, Johnson learned that he was to be transferred to the Federal Correctional Institution in Elkton, Ohio ("FCI Elkton"), even though he had previously indicated twice to Wynkoop that, if eligible for a transfer, Johnson would prefer to be transferred closer to Connecticut where his family resides.  (Id. ¶¶ 15, 18-19.)

The parties have submitted evidentiary proffers in connection with the motions for summary judgment and, unless otherwise stated, the following relevant facts are undisputed. Inmate grievance procedures at FCI Otisville consist of four stages: (1) an informal appeal to staff; (2) a written request to the Warden; (3) an appeal to the Regional Director; and (4) an appeal to the General Counsel.  (Decl. of Elisa Mason dated Aug. 28, 2008, at ¶ 13.)  Seven of the named Plaintiffs -- Burks, Counts, Fernand, Harge, Stevens, Taylor and Washington -- have not filed any administrative grievance concerning restrictions on congregational prayer at FCI Otisville.  (Mason Decl. ¶¶ 14, 15.)  Plaintiffs Johnson and Pandy filed administrative grievances concerning limitations on congregational prayer at FCI-Otisville in 2005, but their requests were denied and

appealed to the fullest extent possible.  (Id. ¶¶ 16-19; Exs. B, C.)  According to Plaintiffs'

opposition papers, Johnson and Pandy did not file suit in 2005 because prison officials nonetheless

stopped interfering with congregational prayers after their administrative remedies had been

exhausted.  (Opp'n at 4.)  Warden Killian took office in April 2007 (Mason Decl. ¶ 6), and Johnson

and Pandy did not thereafter file any administrative grievance concerning the prayer policies

enforced by Killian.  (Id. ¶¶ 17-19.)

Plaintiff Johnson was transferred to FCI Elkton on August 28, 2007.  (Mason Decl. ¶

10.)  Plaintiffs Harge, Fernand and Stevens were each released from BOP custody sometime

between March and July 2008.  (Id. ¶ 12.)  Plaintiffs Pandy, Burks, Counts, Taylor and

Washington remain at FCI Otisville.


DISCUSSION

Summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure

is to be granted in favor of the moving party when "the discovery and disclosure materials on file,

and any affidavits show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary

judgment bears the burden of establishing that no genuine issue of material fact exists.  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  However, as the Second Circuit has explained, it is

not enough for the party opposing summary judgment to show that "'some metaphysical doubt as to

the material facts'" exists.  Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  Instead, the

nonmoving party must proffer specific facts showing the existence of a genuine issue for trial.  Id.

"[M]ere conclusory allegations, speculation or conjecture," will not provide a sufficient basis for a

non-moving party to resist summary judgment.  Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d

Cir. 1996).  On cross-motions for summary judgment, "the court must evaluate each party's motion

on its own merits, taking care in each instance to draw all reasonable inferences against the party

whose motion is under consideration."  Schwabenbauer v. Bd. of Educ. of Olean, 667 F.2d 305,

314 (2d Cir. 1981).

    The Prison Litigation Reform Act of 1995 (the "PLRA") provides that "[n]o action

shall be brought with respect to prison conditions under section 1983 of this title, or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted."  42 U.S.C.A. § 1997e(a) (West 2003).

This exhaustion requirement "applies to all inmate suits about prison life, whether they involve

general circumstances or particular episodes, and whether they allege excessive force or some other

wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  Prisoners must exhaust administrative

remedies even if they believe that administrative remedies would be ineffective or futile.  Harris v.

Bowden, No. 03 Civ. 1617 (LAP), 2006 WL 738110, at *2 (S.D.N.Y. March 23, 2006).

Furthermore, the PLRA requires "proper exhaustion," that is, a prisoner must follow the system's

procedural rules because the "benefits of exhaustion can be realized only if the prison grievance

system is given a fair opportunity to consider the grievance."  Macias v. Zenk, 495 F.3d 37, 41 (2d

Cir 2007) (interpreting Woodford v. Ngo, 548 U.S. 81, 93-95 (2006)).

    The Second Circuit has recognized exceptions to the exhaustion rule where a

prisoner plaintiff plausibly seeks to counter defendants' contentions that the prisoner has failed to

exhaust available administrative remedies as required by the PLRA.  See Hemphill v. New York,

380 F.3d 680,686 (2d Cir 2004).  First, a court should consider whether administrative remedies

were unavailable.  Id.  Second, a court should inquire into whether the defendant's actions, by

threat or otherwise, inhibited the inmate's exhaustion remedies, so as to estop the defendant from

raising as a defense the plaintiff's failure to exhaust.  Id.  Third, a court should consider whether

there are "special circumstances" that plausibly justify the prisoner's failure to comply with

administrative procedure, such as a reasonable misinterpretation of the prison system's regulations.

Id. at 686, 689.  The existence of such special circumstances "must be determined by looking at

circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in

the normally required way."  Giano v. Goord, 380 F.3d 670, 678 (2d Cir. 2004).

        Typically, the dismissal of a claim for failure to exhaust administrative remedies is

without prejudice, since a "prisoner who brings suit without having exhausted these remedies can

cure the defect simply by exhausting them and then reinstituting his suit."  Berry v. Kerik, 366 F.3d

85, 87 (2d Cir. 2004) (quoting Snider v. Melindez, 199 F.3d 108, 111-112 (2d Cir. 1999)).

However, "where exhaustion was required but administrative remedies have become unavailable

after the prisoner had ample opportunity to use them and no special circumstances justified failure

to exhaust," dismissal with prejudice is warranted.  Id. at 88.


Plaintiffs' RFRA and First Amendment Prayer Policy Claims are Asserted Only Against Defendants

Killian and Laskin, and the First Amendment Retaliation Claim is Asserted Only Against

Defendant Wynkoop by Plaintiff Johnson

        Plaintiffs' opposition papers confirm that the RFRA and First Amendment prayer

policy claims are intended to be asserted only against Defendants Killian and Laskin, and that the

First Amendment retaliation claims are asserted only against Defendant Wynkoop.  (Opp'n at 1.)

Plaintiffs further clarify that the First Amendment retaliation claims against Wynkoop are asserted

only on behalf of Plaintiff Johnson.  (Id.)  Accordingly, the FAC is dismissed without prejudice

insofar as it appears to assert RFRA and First Amendment prayer policy claims against Defendant Wynkoop, First Amendment retaliation claims against Defendants Killian and Laskin, and First Amendment retaliation claims against Wynkoop on behalf of anyone other than Johnson.

<u>The RFRA and First Amendment Prayer Policy Claims are Dismissed for Failure to Exhaust Administrative Remedies</u>

The Court need not address Defendants' argument that Plaintiffs have failed to put forth allegations that Rabbi Laskin was personally involved in the 2007 prayer policies, because the Court concludes that Plaintiffs' RFRA and First Amendment prayer policy claims must be dismissed for failure to exhaust administrative remedies as required by the PLRA.

It is undisputed that none of the nine named plaintiffs filed an administrative grievance concerning the prayer policies as administered under Warden Killian in 2007.  With respect to Johnson and Pandy, Plaintiffs argue that they had exhausted their administrative grievances because they filed and fully appealed administrative grievances in 2005 concerning the prayer policies at that time.  However, the gravamen of Plaintiffs' complaint concerns the prayer policies as administered under Warden Killian in 2007, and it is noteworthy in this regard that Plaintiffs claim that Warden Killian imposed restrictions that were harsher than those that were in place under her predecessors.  The PLRA requires proper exhaustion because the "benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance," <u>Macias v. Zenk</u>, 495 F.3d 37, 41 (2d. Cir 2007) (citing <u>Woodford v. Ngo</u>, 548 U.S. 81, 93-95 (2006)), and the Killian administration has been given no such opportunity. Therefore, the 2005 administrative grievances do not satisfy the exhaustion of administrative remedies requirement as it pertains to the instant lawsuit.

Plaintiffs rely on <u>Jones v. Bock</u>, 549 U.S. 199 (2007), which held that plaintiffs need not specifically identify certain individuals in the administrative grievance in order to properly exhaust as to those individuals.  However, the problem is not that Johnson and Pandy failed to identify Killian in their administrative grievance, but that the administrative grievance filed in 2005 complained of a wholly different set of circumstances -- the prayer restrictions in effect in 2005 -- than the circumstances complained of in the instant lawsuit -- the prayer restrictions allegedly imposed by Warden Killian in 2007.  Therefore, Plaintiffs' reliance on <u>Jones</u> is misplaced.

Plaintiffs also argue that filing a new administrative grievance concerning the 2007 prayer restrictions would have been futile, because prison authorities had already denied the 2005 grievance.  However, such a prediction of denial, even if wholly reasonable, does not warrant depriving the prison administration of the opportunity to address the claim in the first instance, a paramount goal of the PLRA.  <u>See</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 89-90 (2006) (exhaustion requirements are designed precisely "to deal with parties who do not want to exhaust," such as those who "conclude - correctly or incorrectly - that exhaustion is not efficient in that party's particular case," in order "to give the agency a fair and full opportunity to adjudicate their claims."); <u>cf.</u> <u>Booth v. Chutner</u>, 532 U.S. 731, 741 n.6 (2001) (rejecting argument that filing an administrative grievance was "futile" because the prisoner sought only money damages, which could not be provided by the administrative grievance process, noting, "we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise").

Nor does this case fall under any of the exceptions under Second Circuit case law. Plaintiffs proffer no evidence that administrative remedies were not available, or that Plaintiffs were prevented in any way from pursuing these grievances.  Even if the allegations in the FAC were construed as true, including the allegations concerning Wynkoop's retaliation against Johnson for his

filing this suit, there would still be no indication of any threats issued <u>prior</u> to the initiation of the lawsuit.  Plaintiffs also point to no existing regulations or law, or to any evidence of actions by any prison official that would have led Johnson or Pandy to reasonably believe that the administrative grievance that was filed in 2005 excused them from filing an administrative grievance in 2007 concerning Killian's alleged application of congregational prayer restrictions.  Accordingly, Johnson's and Pandy's RFRA and First Amendment prayer policy claims, asserted against Defendants Killian and Laskin in both their individual and official capacities, must be dismissed.

Plaintiffs also fail to proffer any plausible explanation for the remaining seven plaintiffs' failure to exhaust administrative remedies such that they would qualify for an exception to the exhaustion rule.  Plaintiffs' argument that these seven plaintiffs need not exhaust their administrative remedies because Plaintiff Johnson is attempting to represent these individuals in a class action is inapposite since Johnson himself has failed to exhaust, as explained above.[1] Accordingly, the RFRA and First Amendment prayer policy claims as asserted by the remaining seven plaintiffs against Defendants Killian and Laskin in both their individual and official capacities must be dismissed as well.

The RFRA and First Amendment prayer policy claims asserted by Plaintiffs Johnson, Harge, Fernand and Stevens, must be dismissed <u>with prejudice</u> because these plaintiffs

---

[1] Moreover, a <u>pro se</u> plaintiff cannot sue on behalf of a class and, in the cases upon which Plaintiffs rely, Plaintiffs' theory of vicarious exhaustion was applied only after a class had already been certified.  <u>See, e.g.</u>, <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1287 (11th Cir. 2004) ("a class of prisoner-plaintiffs certified under Rule 23(b)(2) [of the Federal Rules of Civil Procedure] satisfies the PLRA's administrative exhaustion requirement through vicarious exhaustion, i.e., when one or more class members has exhausted his administrative remedies with respect to each claim raised by the class").  Here, the seven other plaintiffs are not members of a certified class.

had ample opportunity to file an administrative grievance but are no longer in a position to do so: Johnson filed this suit in June 2007 and was not transferred out of FCI Otisville until August 28, 2007, and therefore had enough of an opportunity to file an administrative grievance prior to his transfer; and Harge, Fernand and Stevens were released from BOP custody sometime between March and July 2008.  However, the RFRA and First Amendment prayer policy claims raised by Plaintiffs Pandy, Burks, Counts, Taylor and Washington, who remain at FCI Otisville, are dismissed <u>without prejudice</u> and with leave to recommence the litigation after they have exhausted their administrative remedies.

<u>Plaintiffs' Cross-Motion for Summary Judgment</u>

Plaintiffs cross-move for summary judgment on the basis that the prayer policies enacted by Killian were not authorized by the BOP's own official policies on congregational prayer.  Because Plaintiffs' RFRA and First Amendment prayer policy claims have either been voluntarily withdrawn or dismissed for failure to exhaust, the substantive aspect of this claim is not properly before the Court at this stage.  Accordingly, Plaintiffs' cross-motion for summary judgment is denied without prejudice.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion for summary judgment is granted and Plaintiffs' cross-motion is denied, and only Plaintiff Johnson's First Amendment retaliation claim against Defendant Wynkoop, in her individual and official capacity, remains in this action.

The following claims are dismissed without prejudice and with leave to replead: all RFRA and First Amendment prayer policy claims against Defendant Wynkoop; all First

Amendment retaliation claims against Defendants Killian and Laskin; the First Amendment

retaliation claims against Defendant Wynkoop as asserted by Plaintiffs Pandy, Burks, Counts,

Fernand, Harge, Stevens, Taylor and Washington; and the RFRA and the First Amendment prayer

policy claims against Defendants Killian and Laskin as asserted by Plaintiffs Pandy, Burks, Counts,

Taylor and Washington. The RFRA and First Amendment prayer policy claims against Defendants

Killian and Laskin in their individual and official capacities as asserted by Plaintiffs Johnson,

Harge, Fernand and Stevens are dismissed with prejudice.

The Clerk of Court is respectfully requested to terminate Docket Entry No. 24, and

terminate Plaintiffs Pandy, Burks, Counts, Fernand, Harge, Stevens, Taylor and Washington and

Defendants Killian and Laskin in connection with the caption of this case. All settlement and pre-

trial management issues continue to be referred to Magistrate Judge Eaton.

SO ORDERED.

Dated:       New York, New York
             April 21, 2009

                                                    LAURA TAYLOR SWAIN
                                                    United States District Judge