UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
NEIL JOHNSON,

              Plaintiff,

      - against -               **MEMORANDUM AND ORDER**

WARDEN J. KILLIAN and CASE MANAGER D.      07 Civ. 6641 (NRB)
WYNKOOP, in their official and individual
capacities,

              Defendants.
-----------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    This litigation commenced before Judge Laura Taylor Swain nearly six years ago, when <u>pro se</u> plaintiff Neil Johnson, a former inmate at the Federal Correctional Institution in Otisville, New York ("FCI-Otisville" or the "prison"), filed a complaint against Warden J. Killian and case manager D. Wynkoop (collectively, the "defendants") under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb (the "RFRA"), and the First Amendment to the U.S. Constitution.[1]  In his amended complaint, Johnson claims that the defendants violated the RFRA and the First Amendment by restricting Muslim inmates' ability to perform congregational group prayers at FCI-Otisville in

---

[1]    Johnson also asserted claims against the head of the prison's Religious Services Department, Rabbi N. Laskin.  However, Laskin passed away during the pendency of these proceedings, and the Court dismissed him from this action on July 20, 2012.  <u>See</u> Order of Dismissal as to Def. Rabbi Laskin 2, July 20, 2012, Dkt. No. 77.

accordance with the Islamic faith (the "group prayer claims").[2] In addition, Johnson claims that Wynkoop violated the First Amendment by transferring Johnson to another federal facility after he sought to redress his grievances concerning the prison's group prayer policy (the "retaliation claim").

On April 21, 2009, Judge Swain dismissed the group prayer claims on the basis that Johnson failed to exhaust his administrative remedies.[3] See Johnson, 2009 WL 1066248, at *4-5. On August 23, 2010, this Court granted summary judgment as to Johnson's remaining retaliation claim, thereby dismissing the amended complaint in its entirety. See Johnson v. Killian, No. 07 Civ. 6641 (NRB), 2010 WL 3468124, at *10 (Aug. 23, 2010). On May 16, 2012, the Court of Appeals vacated Judge Swain's decision and remanded the group prayer claims for further proceedings before this Court. See Johnson v. Killian, 680 F.3d 234, 239 (2d Cir. 2012).[4] The defendants now seek dismissal of the group prayer claims pursuant to Rules 12(b)(1) and 56(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, we grant the defendants' motion.

---

[2]    Eight other plaintiffs initially joined Johnson in asserting the group prayer claims. However, Judge Swain terminated these individuals from this action on April 21, 2009. See Johnson v. Killian, No. 07 Civ. 6641 (LTS)(DFE), 2009 WL 1066248, at *5 (S.D.N.Y. Apr. 21, 2009).

[3]    This case was referred to our docket on June 5, 2009. Thereafter, we denied Johnson's motion for reconsideration of Judge Swain's decision. See Johnson v. Killian, No. 07 Civ. 6641 (NRB), 2009 WL 1787724, at *1 (S.D.N.Y. June 23, 2009).

[4]    The Court of Appeals "dismissed those aspects of Johnson's appeal not related to whether he had failed to exhaust his administrative remedies." Johnson, 680 F.3d at 238.

## BACKGROUND[5]

The procedural history and underlying facts of the group prayer claims are set forth in Judge Swain's and the Second Circuit's opinions, familiarity with which we assume. See Johnson, 2009 WL 1066248, at *1-2; Johnson, 680 F.3d at 236-37. In brief, Johnson has been in the custody of the Federal Bureau of Prisons (the "BOP") since 1993, when he began serving a 320-month term of imprisonment for conspiring to distribute over 100 grams of heroin. Colvin Decl. ¶¶ 4-5. From approximately September 2000 to August 2007, Johnson was incarcerated at FCI-Otisville. Id. ¶ 8. There, he was a member of the Islamic community. Compl. ¶ 3.

Johnson alleges that the Islamic faith requires its adherents to participate in group prayer five times daily. Compl. ¶ 5. Starting in 2005, however, officials at FCI-Otisville began prohibiting group prayer in certain areas of the correctional facility, thereby restricting Muslim inmates' ability to comply with the strictures of their religion. Id. ¶ 6. The prison ultimately adopted a written policy on religious practices that addressed, among other things, the locations in

---

[5]     The Background is derived from the Amended Complaint ("Compl."), filed January 31, 2008; the Declaration of Crista Colvin in Support of Defendants' Motion to Dismiss and for Summary Judgment ("Colvin Decl."), filed August 23, 2012, and the exhibit attached thereto; and the Declaration of Li Yu in Support of Defendants' Motion to Dismiss and for Summary Judgment ("Yu Decl."), filed August 23, 2012, and the exhibits attached thereto.  Unless otherwise noted, the facts are undisputed.

the correctional facility where inmates were permitted to engage in group prayer.[6]  Colvin. Decl. ¶¶ 12-13.  However, the prison did not consistently enforce this policy until April 2007, when Killian became warden.  Compl. ¶ 7.

As relevant here, the policy permitted group prayer in the prison chapel,[7] but not in the inmates' housing units.  Colvin Decl., Ex. 1 ¶ 5(a); Compl. ¶¶ 8, 14.  However, Johnson alleges that the chapel was only open for group prayer once per day, forcing many Muslim inmates to perform their remaining prayers individually in their cells.  Compl. ¶¶ 8-9.  Johnson claims that the cells did not provide a suitable place of prayer, because their restrictive size prevented many Muslim inmates from facing east and engaging in necessary movements, "such as bowing and prostrating."  <u>Id.</u> ¶ 10.  Furthermore, Johnson alleges that the cells were in close proximity to family photographs, calendars, and television programs, while the Islamic faith generally prohibits its adherents from praying in the presence of images of living creatures.  <u>Id.</u> ¶¶ 11-12.

---

[6]    The policy, entitled "Religious Beliefs and Practices of Committed Offenders," is designated as OTV Institutional Supplement 5360.09b.  Colvin Decl., Ex. 1.  Johnson apparently contests that this policy was in effect in 2007.  <u>See</u> Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n") at 13-14.  However, the precise date of implementation is immaterial, because there is congruence between the policy and Johnson's allegations of practice.

[7]    The policy also allowed inmates to pray "in small gropus [sic] of two or three" during "breaks at work or in between classes at school," so long as such prayers were approved by the inmates' program manager and deemed necessary by FCI-Otisville's religious services staff.  Colvin Decl., Ex. 1 ¶ 5(a).

In August 2007, the BOP transferred Johnson to the Federal Correctional Institution in Elkton, Ohio, see Colvin Decl. ¶¶ 6, 8, where he remained until September 2012, when the BOP reassigned him to his current place of incarceration in Edgefield, South Carolina, see Endorsed Letter 1, Oct. 11, 2012, Dkt. No. 87. Although Johnson is no longer housed in FCI-Otisville, he purports to challenge the defendants' implementation of the group prayer policy on behalf of himself and a putative class of Sunni Muslim inmates who remain incarcerated at the prison. Compl. ¶ 3. Johnson seeks declaratory and monetary damages against the defendants, the latter presumably under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

## DISCUSSION

### I.   The Defendants Are Entitled to Seek Dismissal of the Group Prayer Claims on Mootness and Qualified Immunity Grounds

As a threshold matter, Johnson argues that the defendants have improperly moved to dismiss the group prayer claims because they have not yet answered those claims. Pl.'s Opp'n at 7-8. However, the procedural history of this case squarely refutes Johnson's contention.

On August 29, 2008, the defendants timely moved to dismiss the group prayer claims on several grounds, including, as relevant here, exhaustion and mootness. See Mem. & Order 1,

Aug. 4, 2008, Dkt. No. 23 (then-Magistrate Judge Douglas F. Eaton extending the time for the defendants to respond to August 15, 2008); Endorsed Letter 2, Sept. 2, 2008, Dkt. No. 28 (Judge Swain setting August 29, 2008 as the due date for the defendants' motion).  After Judge Swain granted the defendants' motion to dismiss, it was unnecessary -- and, indeed, impossible -- for the defendants to answer the group prayer claims. However, when the Second Circuit remanded those claims to us, the defendants filed the instant motion in a timely manner.[8] Therefore, the motion is properly before this Court.

Nonetheless, Johnson maintains that the defendants waived their qualified immunity defense by failing to raise it in any of their pleadings, including their earlier motion to dismiss. Pl.'s Opp'n at 9-12.  Although waiver under these circumstances theoretically may be possible, cf. English v. Dyke, 23 F.3d 1086, 1090 (6th Cir. 1994) (noting that a failure to assert qualified immunity "in a pre-answer motion to dismiss waives the right to raise the issue in a second pre-answer motion to dismiss") (emphasis omitted), a court may excuse such waiver when the plaintiff fails to show that he or she would suffer "significant prejudice" from the defendants' improper assertion

---

[8]     To the extent that Johnson faults the defendants for moving for summary judgment before filing an answer, Rule 56 of the Federal Rules of Civil Procedure makes clear that a defendant "may file a motion for summary judgment at any time until 30 days after the close of all discovery."  Fed. R. Civ. P. 56(b) (emphasis added); see also Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 573 (2d Cir. 2005).

of the defense. <u>See</u> <u>Sorano v. Taggart</u>, 642 F. Supp. 2d 45, 55 (S.D.N.Y. 2009) (collecting cases). Here, even assuming, <u>arguendo</u>, that the defendants waived their defense, Johnson has failed to satisfy that burden.

Johnson contends that he would benefit from discovery on the question of qualified immunity. Pl.'s Opp'n at 11. However, the factual record is not seriously in dispute, and thus the viability of the qualified immunity defense is now a question of law. <u>See, e.g.</u>, <u>Lennon v. Miller</u>, 66 F.3d 416, 421 (2d Cir. 1995) ("[T]he ultimate legal determination whether a reasonable [federal official] should have known he acted unlawfully is a question of law better left for the court to decide.") (internal quotation marks and alterations omitted). In any event, even if the defendants waived their qualified immunity defense at <u>this</u> stage of the proceedings, it would not necessarily follow that they waived the defense "for all purposes," including its use at trial. <u>English</u>, 23 F.3d at 1090. Because Johnson will inevitably face the issue of qualified immunity at some point in these proceedings, he will suffer no prejudice if we reach the merits of that defense now.

## II. Mootness Deprives This Court of Jurisdiction Over Johnson's Request for Declaratory Relief

It is well established in this Circuit that "an inmate's transfer from a prison facility generally moots claims for

declaratory and injunctive relief against officials of that facility." Shepherd v. Goord, 662 F.3d 603, 610 (2d Cir. 2011). Here, Johnson transferred from FCI-Otisville, where the defendants are or were employed, in August 2007. Although Johnson purports to assert his group prayer claims on behalf of the prison's Sunni Muslim community, a pro se plaintiff may not represent the interests of third parties. Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998); see also Rodriguez v. Eastman Kodak Co., 88 Fed. App'x 470, 471 (2d Cir. 2004) ("[I]t is well established that a pro se class representative cannot adequately represent the interests of other class members.") (internal quotation marks omitted).[9]  Therefore, Johnson's request for declaratory relief no longer presents a live controversy, and we dismiss that claim as moot.[10]

So too do we dismiss Johnson claims under the RFRA. That statute provides, in relevant part, that an individual may "obtain appropriate relief against a government" when his or her

_____

[9]  This is not the first time that Johnson has been confronted with this reality. See Mem. & Order 1, Dec. 20, 2007, Dkt. No. 14 (Magistrate Judge Eaton emphasizing that "a non-lawyer can never represent any class or any person other than himself"); Johnson, 2009 WL 1066248, at *5 n.1 (Judge Swain noting that "a pro se plaintiff cannot sue on behalf of a class").
[10]  To avoid this result, Johnson emphasizes that then-Chief Judge Kimba Wood, who handled Johnson's motion for a temporary restraining order in August 2007, stated that Johnson's transfer from FCI-Otisville would not render his lawsuit moot. See Order 2, Aug. 10, 2007, Dkt. No. 4. However, as Magistrate Judge Eaton rightly noted in May 2008, Johnson's lawsuit was "not mooted by the mere fact of transfer," but "by his apparent concession that his transferee prison [wa]s not violating his right to perform congregational prayers." Johnson v. Killian, No. 07 civ. 6641 (LTS)(DFE), 2008 WL 2037448, at *2 (S.D.N.Y. May 7, 2008).

"religious exercise has been burdened in violation of [the RFRA]." 42 U.S.C. § 2000bb-1(c).  As courts in this Circuit have recognized, this language does not demonstrate the clear intent necessary to effect a congressional abrogation of the government's sovereign immunity from suits for damages.  <u>See</u> <u>Gilmore-Bey v. Coughlin</u>, 929 F. Supp. 146, 149-51 (S.D.N.Y. 1996) (holding that the RFRA did not permit plaintiff's suit for monetary damages against state officials); <u>Commack Self-Service</u> <u>Kosher Meats Inc. v. State of N.Y.</u>, 954 F. Supp. 65, 67-70 (E.D.N.Y. 1997) (finding that the RFRA did not waive a state government's sovereign immunity from damages).[11]  Because Johnson is only entitled to declaratory or injunctive relief under the RFRA, the claims he asserts under that statute are moot for the reasons previously noted.

### III. The Defendants' Qualified Immunity Bars Johnson's Remaining Claim for Damages Under the First Amendment

The doctrine of qualified immunity "shields 'government officials from liability for civil damages insofar as their

---

[11]    <u>Accord Oklevueha Native Am. Church of Haw., Inc. v. Holder</u>, 676 F.3d 829, 840 (9th Cir. 2012) (holding that the "RFRA does not waive the federal government's sovereign immunity from damages"); <u>Webman v. Fed. Bureau of Prisons</u>, 441 F.3d 1022, 1026 (D.C. Cir. 2006) (same); <u>see also Sossamon v. Texas</u>, 131 S. Ct. 1651, 1659 (2011) (holding that the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc <u>et seq.</u> -- which, like the RFRA, authorizes actions seeking "appropriate relief" from the government -- does not waive a state's sovereign immunity from monetary damages, as the language does not provide "the unequivocal expression of state consent [to waiver]").  <u>But see Rourke v. N.Y. State Dep't of Corr. Servs.</u>, 915 F. Supp. 525, 540 (N.D.N.Y. 1995) (finding that "the RFRA <u>did</u> abrogate the [E]leventh [A]mendment bar to suits against state governments and their agencies by citizens of the defendant state in federal court").

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" DiStiso v. Cook, 691 F.3d 226, 240 (2d Cir. 2012) (quoting Messerschmidt v. Millender, 132 S. Ct. 1235, 1244 (2012)). The doctrine "thus affords government officials 'breathing room' to make reasonable -- even if sometimes mistaken -- decisions, and 'protects all but the plainly incompetent or those who knowingly violate the law' from liability for damages." Id. (quoting Messerschmidt, 132 S. Ct. at 1244, 1249) (internal citations omitted).

At the summary judgment stage, dismissal on qualified immunity grounds is appropriate only where the defendant establishes that "no rational jury could conclude" that (1) the defendant "'violated a statutory or constitutional right'" and (2) "'the right was clearly established at the time of the challenged conduct.'" Coollick v. Hughes, 699 F.3d 211, 219 (2d Cir. 2012) (quoting Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011)). District courts maintain discretion to decide which of these prongs "'to tackle first.'" Id. (quoting al-Kidd, 131 S. Ct. at 2080); see also Hilton v. Wright, 673 F.3d 120, 126 (2d Cir. 2012) (noting that Pearson v. Callahan, 555 U.S. 223 (2009), permits courts to analyze "the second, and often dispositive, step first").

Here, we exercise our discretion to decide the issue of qualified immunity under the second prong.[12] A "'[g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that'" his or her actions "'violate[] that right.'" Coollick, 699 F.3d at 220 (quoting al-Kidd, 131 S. Ct. at 2083). In evaluating whether a right is clearly established, "we consider (1) whether the right was defined with reasonable specificity[,] (2) whether Supreme Court or court of appeals case law supports the existence of the right in question, and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful." McGarry v. Pallito, 687 F.3d 505, 512 (2d Cir. 2012) (internal quotation marks omitted).

In this case, the defendant's implementation of FCI-Otisville's group prayer policy was not objectively unreasonable, because it was not "clearly established" in 2007 that Muslim inmates were entitled to participate in group prayer anywhere in the correctional facility, including in their

---

[12] Indeed, "[d]eciding a case under prong two saves scarce judicial resources by avoiding unnecessary decisions whether certain conduct violates a constitutional or statutory right, when it is beyond reproach that the conduct was not objectively unreasonable in light of existing law." Coollick, 699 F.3d at 219-20 (citing Pearson, 555 U.S. at 237).

housing units.[13]  See Shabazz v. Coughlin, 852 F.2d 697, 700 (2d
Cir. 1988) (finding that "there was a legitimate question as to
whether a prisoner had a right to engage in group prayer" and
thus holding that prison officials were entitled to qualified
immunity when they restricted such prayer in the prison's
recreation yard) (internal quotations and citation omitted);
Withrow v. Bartlett, 15 F. Supp. 2d 292, 295-98 (W.D.N.Y. 1998)
(finding that state prison officials did not violate the
plaintiff's First Amendment rights by disciplining him for
participating in group prayer in the recreation yard); see also
Jackson v. Coughlin, 612 N.Y.S.2d 89, 90 (3d Dep't 1994)
(upholding a prison policy that prohibits Muslim inmates from
engaging in ritual prayers in a prison gymnasium and recreation
yard).[14]

     For example, in Withrow, the U.S. District Court for the
Western District of New York found that state prison officials
did not violate the plaintiff's First Amendment rights by
prohibiting him from participating in group prayer in the prison

---

[13]    Nor has this right achieved that status today.  See Smith v. Artus, No.
07 Civ. 1150 (NAM/ATB), 2010 WL 3910086, at *27-29 (N.D.N.Y. Sept. 30, 2010)
(surveying the case law and determining that "it still does not appear well
established" that an inmate has the right to engage in demonstrative group
prayer in a prison recreation yard); Sweeper v. Taylor, No. 06 Civ. 379
(NAM/GJD), 2009 WL 815911, at *7 (N.D.N.Y. March 27, 2009) (stating that the
current case law did not "clearly establish" the plaintiff's "right to pray
together with six other inmates in a work area during his working hours").
[14]    But see Abdullah v. Smith, 453 N.Y.S.2d 541, 543-44 (N.Y. Sup. Ct.
1982) (holding that restrictions on group prayer in a prison recreational
yard are unconstitutional under state law), aff'd, 465 N.Y.S.2d 81 (4th Dep't
1983).

recreation yard. 15 F. Supp. 2d at 298. In reaching this decision, the court noted, among other things, that prison officials had legitimate penological reasons for restricting group prayer, because such prayer might spawn "[g]roup conflicts" in a setting where "there are few correctional officers to deal with the matter." Id. at 296; see also Jackson, 612 N.Y.S.2d at 90 (acknowledging "the legitimate security and staffing concerns demonstrated by defendants if they were required to accommodate plaintiffs' [group prayer] demands"). The defendants have articulated similar security and staffing concerns here.[15] See Colvin Decl. ¶¶ 15-18. In light of the preexisting case law, the defendants had a reasonable basis to believe that implementation of the group prayer policy provided a legally viable means for addressing those concerns.

Even if such implementation required certain Muslim inmates to pray individually in their cells, this Court is not aware of any precedents indicating that Muslim inmates are entitled to a prayer space that allows them to face east, prostrate, and/or

---

[15]   Specifically, the defendants note that, at the time of Johnson's incarceration, a single BOP correctional officer typically monitored each housing unit, which held approximately 160 inmates. Colvin Decl. ¶ 15. The defendants contend that permitting group prayer in the housing units could (1) "lead to violent confrontations between inmates engaging in group prayers and non-participating inmates who could feel offended, threatened, or excluded"; (2) "lead to conflicts among inmates over access to space"; and/or (3) "present[] a security concern relating to the perception or reality of gang formation." Id. ¶¶ 16-18. As the defendants point out, the single BOP officer charged with monitoring a given housing unit "would not be in a position to prevent conflicts between praying and non-praying inmates from escalating into violent confrontations." Id. ¶ 16.

pray outside the presence of animate imagery.  To the contrary, case law from outside this Circuit suggests that such rights are not absolute.  See, e.g., Kates v. Micieli, No. 2:09-1447, 2011 WL 744549, at *4, n.8 (W.D. La. Feb. 7, 2011) (recommending dismissal of plaintiff's claim that defendants violated his First Amendment rights by placing him in ambulatory restraints such that he could not face east while praying); Goodvine v. Swiekatowski, 594 F. Supp. 2d 1049, 1060 (W.D. Wis. 2009) (dismissing plaintiff's claim that defendants interfered with the practice of his Islamic faith by providing inconsistent answers regarding the proper direction for his prayers).

Thus, the defendants did not transgress any "bright lines" and are therefore entitled to qualified immunity.  Coollick, 699 F.3d at 221 (internal quotation marks omitted).  Accordingly, we grant the defendants' motion for summary judgment as to Johnson's First Amendment damages claim.

## CONCLUSION

For the foregoing reasons, we grant the defendants' motion (docket no. 80) in its entirety.  We further certify that any appeal of this decision would not be taken in good faith.  See Fed. R. App. P. 24(a)(3)(A).

14

Dated:      New York, New York
            January 8, 2013

                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE


Copies of the foregoing Order have been mailed on this date to
the following:

**Plaintiff**

Neil Johnson
Reg. No. 11679-014
FCI-Edgefield
P.O. Box 725
Edgefield, SC 29824

**Attorney for Defendants**

Li Yu, Esq.
U.S. Attorney's Office
Southern District of New York
86 Chambers Street
New York, NY 10007